**JOHN L. MOTLEY ASSOCIATES, INC.**

v.

**Robert RUMBAUGH, Norman H. Beck, Jr., and Beck Rumbaugh Associates, Inc.**

Bankruptcy No. 85–00917 K.
Adv. No. 85–0924 K.
Misc. No. 86–0073.

United States District Court,
E.D. Pennsylvania.

Feb. 27, 1989.

James Scarpone, Scarpone & Edelson, Newark, N.J., for debtor.

Paul R. DeFilippo, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for John L. Motley Assocs. Inc.

Fred Lowenschuss, Burlington, N.J., for Robert Rumbaugh.

Paul J. Winterhalter, Ciardi Fishbone & Di Donate, Philadelphia, Pa., for Anthony Barone, trustee.

Joseph W. Chandler by Paul I. Guest, Jr., King of Prussia, Pa., for defendant.

---

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

This interpleader action arises from claims of Beck–Rumbaugh Associates, Inc. ("Debtor Corporation")[1] and Robert Rumbaugh ("Rumbaugh"), for commissions due from John L. Motley Associates, Inc. ("Motley Associates") and John L. Motley ("Motley"). Motley also demanded payment from the Debtor Corporation, Rumbaugh, and Norman H. Beck, Jr. ("Beck") for failure to pay for services performed. Rumbaugh counterclaims and crossclaims for conspiracy to defraud and conversion, and he crossclaims to enforce two default judgments against Beck.

This case began with an interpleader action filed by Motley in the District Court of New Jersey in April, 1983. Motley, a manufacturer's representative for various office supply companies, had reached an agreement with Norman H. Beck, Jr., President of the Debtor Corporation. Pursuant to that agreement, if Motley made sales to certain prior customers of the Debtor Corporation, a percentage of commissions (on a sliding scale) derived from those sales would be paid to the Debtor Corporation for a period of five years. During the time that Motley performed under that agreement, Beck and Rumbaugh were litigating their respective interests in the Debtor Corporation in the United States District Court for the Eastern District of Pennsylvania before the Honorable John B. Hannum. Motley commenced the interpleader action after Rumbaugh claimed he was entitled to the commissions which Motley had been paying to the Debtor Corporation. In that interpleader action, Rumbaugh obtained a default judgment against Beck. Rumbaugh also claims a second default judgment against Beck resulting from a 1984 Court of Common Pleas of Philadelphia action.

Subsequently, on March 13, 1985, the Debtor Corporation filed a voluntary Chapter 7 petition in the United States District Court for the Eastern District of Pennsyl-

vania. The Trustee removed the New Jersey interpleader action to the Bankruptcy Court for the District of New Jersey and then moved to transfer the removed interpleader action to the Eastern District of Pennsylvania. The case was transferred to the United States Bankruptcy Court for the Eastern District of Pennsylvania. This court, having also been assigned appeals from decisions in the matter of Beck–Rumbaugh Associates, Inc., Debtor, later withdrew the reference for the interpleader action. In the meantime, Judge Hannum decided certain post-trial motions pending in the case between Beck and Rumbaugh and entered a judgment against Beck in favor of Rumbaugh.

## I. BACKGROUND

On June 30, 1976, Beck and Rumbaugh incorporated the Debtor Corporation in the Commonwealth of Pennsylvania to sell office equipment and supplies as manufacturers' representatives. Beck and Rumbaugh were 51% and 49% shareholders of the corporation respectively; Beck was Chairman of the Board, President and Treasurer, and Rumbaugh was Vice–President and Secretary.

On June 30, 1979, Beck agreed to purchase Rumbaugh's interest in the Debtor Corporation. Rumbaugh subsequently alleged corporate mismanagement, improper and wrongful actions and breach of the purchase agreement by Beck; Civil Action No. 79–3849, assigned to the Honorable John B. Hannum. On January 7, 1983, in response to interrogatories entitled "Plaintiff's Claim for Damages in the Nature of Payment for his Interest in the Corporation," a jury determined that: Rumbaugh voluntarily ceased to be active in the corporate business on June 30, 1979; there was an agreement for the purchase of Rumbaugh's shares in the corporation; Beck unilaterally breached the agreement; and Rumbaugh was entitled to $135,109 for breach of the agreement from Beck personally. The jury also determined that Rum-

---

1. On March 13, 1985, Beck–Rumbaugh Associates Inc. filed a voluntary petition in bankruptcy under Chapter 7.

baugh was entitled to additional damages in the amount of $5,000 from Beck personally and $28,000 from the Debtor Corporation. Judgment was entered in favor of Rumbaugh against Beck in the amount of $135,109 and $5,000 and against the Debtor Corporation in the amount of $28,000 less a set-off in favor of the Debtor Corporation against Rumbaugh in the amount of $8,154.

The district court granted Beck's post-trial motion to require Rumbaugh to surrender his shares in the corporation in order to execute on the $135,109 judgment against Beck, because "the award necessarily includes the price that was agreed for the sale of the stock from Beck to Rumbaugh, as well as any consequential damages resulting from the breach. Therefore if [Rumbaugh] collects the award of $135,109 plus any interest owing, he will have been paid for his interest in the Debtor Corporation, Inc. and to retain his stock will result in double recovery." *Rumbaugh v. Beck*, No. 79–3849 (E.D.Pa. June 1, 1983) (Hannum J.), *aff'd. mem.*, No. 87–1509, Slip Op. (3d Cir. February 25, 1987). The award entitled Rumbaugh to his interest in the corporation as of June 30, 1979. The district court determined that Rumbaugh retained legal ownership of 49% of the shares in the corporation until payment, but that Beck acquired equitable ownership of these shares on June 30, 1979, the date of the agreement. Rumbaugh has not yet executed on this final judgment, but it is clear from the trial court decision, affirmed on appeal, that on payment of the judgment he relinquishes legal as well as equitable title to the shares.

In 1981, Motley Associates and Motley entered into an oral agreement with Beck, on behalf of the Debtor Corporation, to serve as a manufacturer's representative for manufacturers then represented by the Debtor Corporation. At first, commissions were remitted by the manufacturers to the Debtor Corporation, but later, manufacturers sent earned commissions directly to Motley. These commissions, which now total $184,384.08 were deposited by Motley into court when it became unclear to him whether he should pay the commissions to the Debtor Corporation or to Rumbaugh who claimed entitlement. Rumbaugh, individually and as a shareholder, claimed the commissions on the ground that Beck and Motley conspired to waste the assets of the Debtor Corporation and deprived him of his interest in it. The Debtor Corporation claimed the commissions under the oral contract between Beck and Motley. On August 2, 1988, Motley Associates withdrew all claims against the Debtor Corporation, as well as against Rumbaugh and Beck.

## II. DISCUSSION

In this complex interpleader action, Rumbaugh, owner of bare legal title to 49% of the stock of the Debtor Corporation, asserts claims against Motley, individually, and Motley Associates, for converting business assets and business opportunities of the Debtor Corporation to the detriment of Rumbaugh. Rumbaugh also alleges that Motley and Motley Associates engaged in a scheme with Beck, owner of legal and equitable title to 51% of the Debtor Corporation, to defraud Rumbaugh by transferring certain business opportunities from the Debtor Corporation to Motley Associates. Motley has collected the commissions at issue pursuant to an oral contract with Beck and/or the Debtor Corporation to sell accounts of the Debtor Corporation. Rumbaugh can assert these claims against Motley and Motley Associates only in his capacity as a shareholder of the Debtor Corporation, not in his individual capacity. The commissions earned were the property of the corporation and not any individual shareholder. 11 U.S.C. § 541. A cause of action for tortious impairment or destruction of a corporation is vested in the corporation; individual shareholders do not have standing to assert such claims on their own behalf. *Nagle v. Commercial Credit Business Loans, Inc.*, 102 F.R.D. 27 (E.D. Pa.1983). Although the shareholders may be affected by the wrong, they do not have an individual right to redress, but only the right to bring a derivative action on behalf of the corporation itself. *Id.* at 30.

■ The Debtor Corporation filed for bankruptcy under Chapter 7 of the Bankruptcy Code on March 13, 1985. Rumbaugh's counterclaim and cross-claim in this action against Motley and Motley Associates were filed May 23, 1986. When a corporation files for bankruptcy, all corporate causes of action pass to the bankrupt estate and are enforceable only by the trustee in bankruptcy. *Mitchell Excavators v. Mitchell,* 734 F.2d 129 (2d Cir.1984); 11 U.S.C. § 541; *See also Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939) (fiduciary obligations of officers, directors and shareholders that normally are "enforceable directly by the corporation or through a stockholder's derivative action [are,] in the event of bankruptcy of the corporation, enforceable by the trustee."). Therefore, whatever rights Rumbaugh may have had prior to the bankruptcy as a shareholder with legal but not equitable title, after the bankruptcy he could not pursue claims against Motley for conversion and fraud of corporate assets as an individual shareholder. Only the trustee has the right to pursue such claims of the corporate debtor.

■ Rumbaugh, as a shareholder of the Debtor Corporation, also claims the interpleaded funds on deposit with the court. The basis of this claim is unclear from the pleadings but the proposition is incorrect as a matter of law. Rumbaugh contends that so long as he retains legal title to shares of the Debtor Corporation, he remains entitled to his share of the corporate income.

First, his status as holder of bare legal title to shares of the Debtor Corporation does not make him a creditor of the Debtor Corporation. Any right he may have as a shareholder will be recognized only when any remaining assets of the corporation are distributed to shareholders after all claims are resolved.

■ Second, the jury verdict (in Civil Action No. 79–3849) that Rumbaugh voluntarily ceased to be active in the Debtor Corporation as of June 30, 1979 collaterally estops him from asserting any ownership interest in the Debtor Corporation other than that arising from his entitlement to have his judgment paid plus interest, even if we assume, *arguendo,* that Rumbaugh retained his full rights as a shareholder after the entry of judgment, a prerequisite to standing to assert this claim. *See generally, e.g., Haize v. Hanover Insurance Co.,* 536 F.2d 576, 579 (3d Cir.1976) (stating requirements for collateral estoppel effect to be given effect to a prior action); *In re Gaebler,* 88 B.R. 62, 66 (E.D.Pa.1988) (same).

If the equitable distribution of the bankrupt estate is sufficient to fully satisfy Rumbaugh's judgment against Beck, Rumbaugh will *ipso facto* lose his legal title to the shares of the Debtor Corporation. He will no longer have standing as a shareholder or any claim on funds left after all creditors of the Debtor, including himself, have been satisfied. If, on the other hand, the assets of the bankrupt estate are insufficient to satisfy the judgment, there will be nothing left for the shareholders anyway. Thus, Rumbaugh's claim to the funds on deposit can be satisfied only by their distribution in the bankruptcy.

The bankrupt estate is the only party with legal claim to the funds on deposit; the money will be turned over to the estate for equitable distribution. The lien of Rumbaugh's judgment against Beck,[2] attaches to Beck's share of the distribution and must be satisfied to the extent possible. At the time and to the extent the lien is satisfied, Rumbaugh loses legal title to the shares of the Debtor Corporation. While it is clear that Rumbaugh retains legal title to the shares to protect his right to recover his judgment, it is equally clear that he may not vitiate the finality of a judgment by refusing to execute on it.

When the funds on deposit with the court have been turned over to the bankrupt estate for distribution, the two claims for conversion having been dismissed, the RICO claims asserted by Rumbaugh as a

---

**2.** This district court and the bankruptcy court have taken judicial notice of the civil judgment entered on January 10, 1983. *Rumbaugh v.*

*Beck,* No. 79–3849, Slip Op. (E.D.Pa. filed July 28, 1987) [1987 WL 14853].

counterclaim in his answer to the amended complaint remain to be litigated. The court will dispose of these counterclaims according to the schedule established in the attached order.

### ORDER

AND NOW, this 27th day of February, 1989, for the reasons set forth in the court's Memorandum entered February 27, 1989, it is ORDERED that:

1. The funds on deposit with the court in the amount of *$184,384.08* are an asset of the bankrupt estate available for distribution in the bankruptcy court.

2. By reason of the final judgment in Civil Action No. 79–3849, Rumbaugh has a final judgment against the Debtor Corporation for $19,846 with interest compounded annually from January 10, 1983.

3. Rumbaugh also has a final judgment against Beck in the amount of $140,109 plus interest compounded annually from January 10, 1983 that is a lien on Beck's interest in the Debtor Corporation.

### ORDER

AND NOW, this 27th day of February, 1989, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. Robert Rumbaugh's counterclaim for conversion against John L. Motley, Individually, is DISMISSED for lack of standing.

2. Robert Rumbaugh's third-party claim for conversion against John L. Motley Associates, Inc. is DISMISSED for lack of standing.

3. Robert Rumbaugh shall file the attached RICO case statement, subject to the requirements of Rule 11, on or before March 10, 1989. The other parties shall file any motions on or before March 24, 1989. If there are no motions filed, the court will set a discovery schedule at that time.

### RICO CASE STANDING ORDER

*18 U.S.C. §§ 1961–1968*

The above-captioned case contains a civil RICO claim, which has been filed in this court pursuant to 18 U.S.C. §§ 1961–1968. This Standing Order has been designed to establish a uniform and efficient procedure for processing this case.

The plaintiff shall file, within twenty (20) days hereof, a RICO case statement. This statement shall include the facts the plaintiff is relying upon to prove this RICO claim. In particular, this statement shall be in a form that uses the numbers and letters as set forth below, and shall provide the following information:

1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. § 1962(a), (b), (c), and/or (d).

2. List each defendant and state the alleged misconduct and basis of liability of each defendant.

3. List the alleged victims and state how each victim was allegedly injured.

4. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:

a. List the alleged predicate acts and the specific statutes that were allegedly violated;

b. If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances of fraud or mistake shall be stated in particularity";

c. Describe how the predicate acts form a "pattern of racketeering activity"; and

d. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe.

5. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

a. State the names of the individuals, partnerships, corporations, associations, or other legal entities that allegedly constitute the enterprise;

**187**

b. Describe the structure, purpose, function and course of conduct of the enterprise;

c. State whether any defendants are employees, officers or directors of the alleged enterprise;

d. State whether any defendants are associated with the alleged enterprise; and

e. State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself; or members of the enterprise.

6. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

7. Describe the effect of the activities of the enterprise on interstate of foreign commerce.

8. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:

a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

b. Describe the use or investment of such income.

9. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe the acquisition or maintenance of any interest in or control of the alleged enterprise.

10. If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:

a. State who is employed by or associated with the enterprise; and

b. State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).

11. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe the alleged conspiracy.

12. Describe the alleged injury to business or property.

13. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

14. Provide any additional information that you feel would be helpful to the court in trying the RICO claim.

IT IS SO ORDERED.