**In re BECK RUMBAUGH ASSOCIATES, INC.**
**(Two Cases)**

**Civ. A. Nos. 89–7278, 89–4586.**
**Bankruptcy No. 85–00917 S.**

United States District Court,
E.D. Pennsylvania.

May 3, 1990.

Edward Cohen, Anthony Barone, Paul J. Winterhalter, and Fred Lowenschuss, Philadelphia, Pa., for plaintiff.

James J. O'Connell, Philadelphia, Pa., for defendant.

MEMORANDUM and ORDER

SHAPIRO, District Judge.

Pending before the court is the appeal of Joseph W. Chandler ("Chandler") from the Opinion and Order of Bankruptcy Judge Scholl, dated August 4, 1989. 103 B.R. 628. Chandler timely filed a notice of appeal docketed as Civil Action No. 89–6398;[1]

---

**1.** This appeal was abandoned upon filing the notice of appeal in Civil Action No. 89–7278

disposed of herein.

he also filed a motion to alter or amend the Order of August 4, 1989 and a motion to stay that Order pending appeal. By Order of September 6, 1989, Judge Scholl denied Chandler's post-trial motions for the reasons stated therein. Chandler then filed a notice of appeal from the Opinion and Order entered by the court on August 4, 1989 in response to the Trustee's proposed Final Order of Distribution and from the Order of September 6, 1989 denying the post-trial motions on behalf of Chandler; this appeal is docketed as Civil Action No. 89-7278.

Chandler appeals the subordination of a state confessed judgment against Norman H. Beck, Jr. ("Beck") in favor of Chandler to a federal judgment against Beck in favor of Robert Rumbaugh ("Rumbaugh") by the bankruptcy court Order distributing the remaining assets of the debtor, Beck–Rumbaugh, Associates, Inc. ("Beck–Rumbaugh"), to its majority and minority shareholders, Beck and Rumbaugh. Although this court's review of questions of law is plenary, the court will not set aside the factual findings of the bankruptcy court unless the findings are clearly erroneous. Bankruptcy Rule 8013; *Decatur Contracting v. Belin, Belin & Naddeo,* 898 F.2d 339 (3d Cir.1990). The court has considered Chandler's brief on appeal, Chandler's memorandum in support of seven post-trial motions[2], the brief of appellee Rumbaugh in support of Judge Scholl's Opinion and Order, the brief of appellee Anthony Barone, Trustee of the debtor corporation, as well as the record and affirms the bankruptcy court Orders in all respects.

Judge Scholl's Order of August 4, 1989 resolved disputes concerning the final distribution of the funds of the bankrupt estate of the debtor corporation, Beck–Rumbaugh. On September 6, 1989, Judge Scholl denied Chandler's post-trial motions regarding the August 4, 1989 Order. The

Opinions of this court dated August 31 and February 27, 1989, detail the history of the litigation resulting from the operation, dissolution and subsequent bankruptcy of Beck–Rumbaugh. *See John L. Motley Associates, Inc. v. Rumbaugh,* 104 B.R. 683 (E.D.Pa.1989); 97 B.R. 182 (E.D.Pa.1989). The court will not repeat the factual background set forth in its previous Opinions other than to discuss the facts pertinent to this appeal.

Originally, Beck owned fifty-one (51%) percent of Beck–Rumbaugh's stock and Rumbaugh owned the remaining forty-nine (49%) percent of the stock. Beck–Rumbaugh was dissolved by agreement in 1979. Rumbaugh filed an action in federal court against Beck and the corporation for Beck's breach of the agreement to purchase Rumbaugh's interest in the corporation. *Rumbaugh v. Beck,* Civil Action No. 79–3849 (E.D.Pa.). The jury found that Beck had breached the purchase agreement and that Rumbaugh voluntarily ceased to be active in the corporation on June 30, 1979. Judgment was entered in favor of Rumbaugh and against Beck individually in the amount of $140,109 and against Beck–Rumbaugh in the amount of $19,846 ($28,-000 less a counterclaim against Rumbaugh in the amount of $8,154) on January 10, 1983.[3] The district court granted Beck's post-trial motion that Rumbaugh surrender his shares in the corporation in order to execute against Beck so that Rumbaugh could not recover from Beck for breach of the purchase agreement and still retain a 49% shareholder's interest in Beck–Rumbaugh. *Rumbaugh v. Beck,* Civil Action No. 79–3849, Memoranda and Orders of June 1, 1983 and July 27, 1987, 1987 WL 14853 (E.D.Pa.). On appeal of Rumbaugh, the Court of Appeals affirmed the district court rulings in all respects on February 3,

---

**2.** Motion to Amend Findings Pursuant to F.R.C.P. 52; Motion to Alter or Amend Findings Pursuant to F.R.C.P. 59; Motion for New Trial Pursuant to F.R.C.P. 59; Motion for Relief from Judgment or Order Pursuant to F.R.C.P. 60; Motion for New Trial, Amendment of Judgment Pursuant to B.R. 9023; Motion for Relief from Judgment or Order Pursuant to B.R. 9024; Mo-

tion for Reconsideration of Claim Pursuant to B.R. 3008.

**3.** The judgment against the debtor has been properly reduced to $12,397.81 by Judge Scholl's Order of November 21, 1988, 1988 WL 125701 by crediting the corporation with sums Rumbaugh received in postjudgment execution on the corporate assets.

1988. *Appeal of Rumbaugh,* 841 F.2d 1120 (3d Cir.1988).

In 1984, after the federal court judgment in his favor against Beck–Rumbaugh and Beck, Rumbaugh filed an action against Beck, Joan Beck, Chandler and Michael J. DelCollo in the Philadelphia Court of Common Pleas, and alleged a civil conspiracy to deprive Rumbaugh of his share of the income and assets of Beck–Rumbaugh by placing fraudulent mortgages against the Florida condominium owned by the corporation.[4] On March 13, 1985, Beck caused Beck–Rumbaugh to file a voluntary petition for bankruptcy under Chapter 7. Anthony Barone was appointed Trustee for the bankrupt estate of the debtor corporation.

On October 4, 1988, Beck confessed judgment in the amount of $101,671.84 in favor of Chandler in the Court of Common Pleas of Chester County. A writ of execution issued that same day. Later that month Chandler attempted to serve garnishment papers upon the Trustee of the debtor corporation and the Clerk of this court to execute upon Beck's share of the distribution of the bankrupt estate. The bankruptcy court declared the attempted garnishment null and void because federal instrumentalities are immune from state court garnishment. *In Re: Beck–Rumbaugh Associates, Inc.,* Bankruptcy No. 85–00917S, Orders of October 18, 1988 and December 1, 1988, 1988 WL 129343. Chandler obtained physical possession of Beck's shares of stock in the debtor corporation from Beck.

This court's decisions have made clear that Rumbaugh's 1983 judgment lien (affirmed February 3, 1988) attached to Beck's share of Beck–Rumbaugh assets. *John L. Motley Associates, Inc. v. Rumbaugh,* 104 B.R. 683 (E.D.Pa.1989); 97 B.R. 182 (E.D.Pa.1989). That judgment is final and *res judicata* between Rumbaugh and Beck; the requirement that Rumbaugh relinquish ownership of his shares of Beck–

Rumbaugh stock in order to execute on his judgment is a part of that final judgment.

After a hearing on objections to proofs of interest, the bankruptcy court gave Rumbaugh's claim to Beck's share of the debtor corporation's assets priority over Chandler's claim. Judge Scholl determined that Chandler's confessed judgment in 1988 against Beck was the result of collusion between Beck and Chandler to deprive Rumbaugh of his ability to collect on the federal judgment against Beck and the debtor corporation. The bankruptcy court, applying a doctrine of equitable subordination, subordinated Chandler's judgment to Rumbaugh's judgment so that Rumbaugh will receive the balance available in the estate for distribution. 11 U.S.C. § 510(c); *In Re Comtec Industries, Inc.* 91 B.R. 344, 347 (Bankr.E.D.Pa.1988).

Appellant Chandler seeks to overturn the bankruptcy court Orders of August 4, 1989 and September 6, 1989 on several grounds. Chandler contends that the bankruptcy court lacked jurisdiction to find that Chandler's confession of judgment against Beck in the Chester County Court of Common Pleas was collusive. Chandler argues that state law rather than federal bankruptcy law governs priority of interests of competing judgment creditors so that the bankruptcy court overreached by subordinating the lien of Chandler's confessed judgment to Rumbaugh's prior judgment.

Chandler contends that there is insufficient evidence to support a conclusion that Chandler and Beck were in collusion to prevent Rumbaugh from seizing Beck's share in Beck–Rumbaugh on distribution of its assets by having a judgment confessed against Beck. Chandler argues finally that he had no notice that the validity of his state court confessed judgment against Beck was at issue in the Beck–Rumbaugh bankruptcy proceedings.

 The bankruptcy court sits as a court of equity in passing on the allowance

---

**4.** By decree *nisi* of March 16, 1990, Judge Ribner decided Beck, Joan Beck and Chandler wrongfully withheld Rumbaugh's share of condominium rentals and conspired to deprive Rumbaugh of his proportionate share of this

Beck–Rumbaugh asset in the bankruptcy distribution. *Rumbaugh v. Beck,* October Term, 1984, No. 1943 (Phila. Ct.Comm.Pl. March 16, 1990). Objections are pending.

of claims. *Pepper v. Litton,* 308 U.S. 295, 307, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939). A bankruptcy court has the power to disallow claims based on state court judgments obtained by collusion or fraud. *Pepper,* 308 U.S. at 302, 60 S.Ct. at 242–43. The doctrine of equitable subordination permits the bankruptcy court to subordinate a claim in the distribution of the estate where the claimant engaged in inequitable conduct which results in injury to other creditors or confers an unfair advantage on the claimant if the subordination is not inconsistent with the Bankruptcy Code. 11 U.S.C. § 510(c); *see In Re Beck Rumbaugh Associates, Inc.,* 103 B.R. at 633–35; *In Re Comtec Industries, Inc.,* 91 B.R. at 347.

■ The evidence before Judge Scholl established that Beck's state court confession of judgment in favor of Chandler in the amount of $101,671.84 was collusive to deprive Rumbaugh of any recovery on his federal judgment against Beck from Beck's share in the distribution of the debtor's assets.

Chandler knew of Rumbaugh's federal court judgment against Beck for breach of the agreement to purchase Rumbaugh's stock in the debtor corporation before Chandler took judgment against Beck. After Chandler's attempt to garnish Beck's proportionate share of the assets of the bankruptcy estate held by the Trustee was declared null and void, Beck allowed Chandler to attempt to execute by taking possession of the stock certificates. The evidence before the bankruptcy court supported its conclusion that Beck and Chandler concocted a scheme to defraud Rumbaugh by allowing Chandler to execute on Beck's assets. A bankruptcy judge, sitting in equity, need not help to effectuate that scheme.

There is no merit to Chandler's claim that he had no notice of Rumbaugh's attack on the priority of his lien or that he had no opportunity to defend his rights as a judgment creditor against Rumbaugh's claim of fraud. Rumbaugh filed objections to Chandler's proof of interest and was on notice of Rumbaugh's accusations of fraudulent and collusive conduct from statements at various proceedings including a pre-hearing conference on June 21, 1989 before Judge Scholl. The bankruptcy court set a hearing on July 24, 1989 regarding Rumbaugh and Chandler's respective proofs of interest and objections; both Rumbaugh and Chandler claimed lien priority to Beck's share in the final distribution of the corporate assets. Chandler had adequate notice that Rumbaugh would attack his judgment at the July 24, 1989 hearing and an adequate opportunity to offer evidence of the validity of the state confessed judgment on which Chandler based his claim of priority. Chandler and/or Beck could have testified as to the circumstances leading to the confessed judgment and the underlying debt but did not do so. Judge Scholl should not be required to reopen the record and permit further delay.

Judge Scholl's findings of fact in the bankruptcy court Opinion of August 4, 1989 are well supported by the evidence of record and surely not clearly erroneous; the judge's understanding of the legal issues and application of legal principles are correct. The bankruptcy court's reasoning in its subsequent Order of September 6, 1989 is also well founded. The evidence supports a finding of collusion between Beck and Chandler to manipulate the affairs of the debtor corporation and prevent Rumbaugh from receiving his share in Beck–Rumbaugh. The circumstances and timing of the events after Rumbaugh's federal judgment against Beck was affirmed by the Court of Appeals support a finding that Beck used Chandler in an attempt to deprive Rumbaugh of his share of the corporate assets and permitted Judge Scholl to subordinate Chandler's claims in his Order of Distribution. The court affirms the bankruptcy court's Orders to enable the distribution of the debtor's assets at long last.

The only other outstanding appeals of bankruptcy court rulings of which this court has notice arise in Civil Action No. 89–4586, where Rumbaugh appeals from the award of certain fees:

1. A commission of 8% ($3,780) to William Brucker & Co., Inc. authorized by The Hon. William A. King, Jr., on August 9, 1985, for sale of a Florida condominium on behalf of the debtor estate.

■ Judge Scholl approved the Trustee's amended final accounting and authorized distribution of the proceeds on May 16, 1989. But the payment of the real estate commission he approved was authorized by an Order appointing a real estate agent to sell the property for the Trustee at a commission rate of 8% in 1985. The appeal is not timely. Bankruptcy Rule 8002(a). Even if the appeal were timely, Rumbaugh has not offered evidence of double commissions or other evidence of impropriety sufficient to set aside the Order. An 8% commission for the sale of real estate, whether in Pennsylvania or Florida, is not inherently unreasonable. Rumbaugh cannot prevail.

2. An award on May 16, 1989 of $4,000 to the Bankruptcy Trustee, Anthony Barone.

■ The Trustee filed an Amended Final Accounting with Judge Scholl, who was most familiar with the Trustee's efforts on behalf of the debtor estate. The Trustee testified regarding his participation in the bankruptcy proceeding. Judge Scholl reduced the Trustee's request. Neither the Trustee's status as a Social Security recipient nor the hourly rate requested is sufficient to convince the court that Judge Scholl abused his discretion by awarding $4,000 to the bankruptcy Trustee. The award will not be set aside.

3. An award on May 5, 1989 to Ciardi, Fishbone & DiDonato, counsel for the Trustee, in the amount of $10,138 and $5 reimbursement of expenses for the period August 1, 1988 through the close of this case.

■ Judge Scholl reduced the amount of counsel's application after careful review. Judge Scholl's great familiarity with the effort necessary as counsel for the Trustee and the effectiveness of said effort by reason of the evidentiary and other proceedings before him cautions against disturbing his award absent any evidence of irregularity or impropriety.

Rumbaugh's real complaint is that counsel for the Trustee was not sufficiently aggressive in gathering the assets of the debtor and protecting them from the fraud of the majority shareholder and others. Rumbaugh claims, with some justification, that his counsel, who was uncompensated by the debtor, was responsible for recouping substantially all of the assets of the estate; this situation is understandable since Rumbaugh will ultimately receive the bulk of the assets available for distribution. Judge Scholl was in a special position to weigh these factors and evaluate whether or not counsel for the Trustee expended too little or too much time in view of the conduct of Rumbaugh's counsel throughout the bankruptcy proceedings. This court declines to disturb Judge Scholl's determination that $10,138 was reasonable compensation for the period from August 1, 1988 through the close of this case, even though the award reduces the assets available for distribution to Rumbaugh.

4. An award on May 16, 1989 of $15,200 to Edward Cohen, Esquire, counsel to Debtor Beck–Rumbaugh Associates, Inc.

This sum (plus $136 for necessary costs in the administration of the estate) was awarded as reasonable compensation for services rendered as counsel to debtor from the filing of the proceedings.[5] Cohen filed the Chapter 7 bankruptcy petition as counsel for Beck, the majority shareholder, but was thereafter appointed counsel for the debtor corporation. Rumbaugh views the fee awarded Cohen as excessive in the circumstances.

The basis for Rumbaugh's attack on Cohen's fee is that he claims Cohen was not acting as counsel for the Trustee (who in Rumbaugh's view was already too generously compensated) or for the debtor, but for Beck, the individual shareholder who

---

5. The award to Edward Cohen, Esquire, was credited with $1,000 previously received by him.

held 51% of the shares of the debtor corporation and participated in fraud on Rumbaugh, the other shareholder who held 49% of the shares. Rumbaugh also contends that Cohen did not segregate time spent on behalf of Beck–Rumbaugh, benefitting both Beck and Rumbaugh, from time spent on behalf of Beck personally.

Cohen applied for reimbursement for 90 hours at $200 per hour, a total of $18,000. Judge Scholl awarded the sum of $15,200 following a hearing at which counsel for Rumbaugh cross-examined Cohen extensively on his application. It is apparent that Judge Scholl considered Rumbaugh's attack on Cohen's services to the estate. If the bankruptcy judge wishes to reconsider his award because of any facts subsequently developed in state court regarding Cohen's representation of the debtor estate and/or Beck individually, he may do so. However, this court will not disturb the award because Judge Scholl was in the best position to determine the extent to which Cohen's services benefitted the debtor's estate; there is no basis for finding the award erroneous.

Although Rumbaugh argues correctly that this court has stated that the total fees of counsel should not be excessive in view of the assets of the estate, his argument that the total fees were in fact excessive has not been adequately developed from the record. The court has no basis for reversal on the grounds that the bankruptcy itself was a fraudulent act to deprive Rumbaugh of the estate's assets by incurring or obtaining counsel fees.

5. Rumbaugh contends that "The costs of bankruptcy along with all legal fees should be assessed against Norman H. Beck, Jr., Joseph W. Chandler, and Paul J. Guest, Jr., Esquire."

This matter does not appear to have been raised in the bankruptcy court and therefore cannot be considered on this appeal. It may be that pending state court proceedings are addressed to this issue.