**In the Matter of WINDTECH, INC., Debtor.**

**Matter of WINDTECH DEVELOPMENT, INC., Debtor.**

**AETNA CASUALTY & SURETY COMPANY, INC., Plaintiff,**

**v.**

**WINDTECH, INC.; et al., Defendants.**

**Nos. 2-86-01275, 2-86-01276.**
**Adv. Nos. 2-87-0045, 2-87-0046.**

United States District Court, D. Connecticut.

Dec. 10, 1987.

Patrick W. Boatman, and Thomas C. Boscarino, Berman, Sable & Boatman, Hartford, Conn., for debtor-defendants.

Lana M. Glovach and Steven M. Zelman, Rome, Case, Kennelly & Klebanoff, P.C., Bloomfield, Conn., for Creditors' Committee.

John T. Harris, Hoppin Associates, Hartford, Conn., for Aetna Cas. & Sur. Co., Inc., plaintiff.

Howard Siegel and Scott D. Rosen, Hoberman & Pollack, P.C., Hartford, Conn., for Zephyr Park LTD., Ian Maciness, William Kritikos, Sr., William Kritikos, Jr. and Ted Kritikos, defendants.

Jeffrey G. Grody and Scott D. Lessne, Sorokin & Sorokin, P.C., Hartford, Conn., and Marvin Gelfand, Gelfand & Hinojosa, Los Angeles, Cal., for Arbutus Corp. and Arbutus Energy Corp., defendants.

Brown B. Smith, Hillyer & Irwin, San Diego, Cal., for Calvin P. Andrews, et al., defendants.

Kirkland W. Garey, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, San Francisco, Cal., and Laura Lindgren, Hennigan and Mercer, Beverly Hills, Cal., for Michael H. Wallace, et al., defendants.

Lissa J. Paris, Murtha, Cullina, Richter and Pinney, Hartford, Conn., for Martin L. Rosenzweig and RMBC Partners.

## ORDER

DORSEY, District Judge.

Absent objection and in accordance with Bankruptcy Rules 5011(b) and 9033(d) and for the sound reasons stated by Judge Krechevsky, the report and recommendation is accepted, adopted and approved. The motions for abstention are granted. SO ORDERED.

## REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTIONS TO ABSTAIN FROM HEARING A PROCEEDING

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

In this matter, movants request that the court abstain, pursuant to the provisions of 28 U.S.C. § 1334(c)(1) (Supp. III 1985),[1] from hearing identical adversary proceedings filed by Aetna Casualty & Surety Company, Inc. (Aetna) in each of the above cases. Bankr.R. 5011(b) provides that this motion be heard by the bankruptcy judge who then files a report and recommendation for disposition of the motion.[2] No

1. *28 U.S.C. § 1334. Bankruptcy cases and proceedings*

. . . . . .

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

2. *Rule 5011.* WITHDRAWAL AND ABSTENTION FROM HEARING A PROCEEDING

. . . . .

(b) *Abstention from Hearing a Proceeding.* Unless a district judge orders otherwise, a motion for abstention pursuant to 28 U.S.C. § 1334(c) shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion. The clerk shall serve forthwith a copy of the report and recommendation on the parties to the proceeding. Within 10 days of being served with a copy of the report and recommendation a party may serve and file with the clerk objections prepared in the manner pro-

evidentiary hearing has been held in this matter, and the following background of the proceeding for which abstention is sought is derived from voluminous exhibits submitted by the parties and from the Windtech, Inc. case file.

II.

The debtor, Windtech, Inc. (Windtech) is a Connecticut corporation who filed a chapter 11 petition in this court on December 24, 1986.[3] Windtech had been in the business of selling a machine known as a wind turbine generator (WTG), created to convert wind energy into electricity. Marvin C. Cheney is the chairman and chief executive officer of Windtech and the designer of the WTG. Windtech, in 1983, sold 113 WTG's to Arbutus Corporation and Arbutus Energy Corporation (collectively, "Arbutus"), and 35 WTG's to Zephyr Park, LTD. (Zephyr), both California entities. Windtech sold these WTG's with warranties that the WTG's would be free from defects in workmanship and material and that they would conform to the description of the product provided by Windtech.

Windtech procured a policy from Aetna to insure these warranty obligations. Aetna also issued certain liability and excess liability insurance policies naming Windtech as the insured. Windtech assembled the WTG's in California and delivered them to the buyers. Arbutus and Zephyr placed the WTG's on foundations in wind parks developed by them and located in California. They then sold the "sited" WTG's to investors who purchased them primarily for tax shelter purposes.[4] Both the Zephyr and the Arbutus offering circulars furnished to potential investors referred to the Windtech warranties and the risk that Windtech, because of its size, might be unable to meet its obligations. The Zephyr circular also stated that Windtech was negotiating to obtain insurance to insure performance of its warranty obligations.

Significant problems arose in the operation of the WTG's; eventually they stopped functioning, and a flood of litigation ensued in California. The litigation involved claims, crossclaims and counterclaims among the investors, Arbutus, Zephyr, Windtech, insurance brokers, engineering consultants, Aetna and other insurance carriers. Issues including, *inter alia,* fraud, negligence, breach of contract, violation of California securities law, breach of fiduciary duties and breach of warranty are set forth in the pleadings of twelve pending California cases introduced into evidence by the parties. In November, 1986, Aetna filed an interpleader action as a crossclaim in one of the California state court suits, which interpleader, in general, sought (1) a determination of whether, and to whom, Windtech is liable under its warranties, (2) a determination of the limits of the Aetna policy, and the appropriate policy beneficiaries, and (3) an order enjoining the prosecution of any lawsuit involving the Aetna policy except in the interpleader action.

Most of these events, including the filing of Aetna's California interpleader, occurred prior to the filing of Windtech's bankruptcy petition in which Windtech alleged it intended to file a plan of reorganization. Since the filing of its bankruptcy petition, Windtech has closed its Glastonbury office, disposed of its inventory, stopped all business operations and dismissed all employees. The lawsuits in California, except for two cases pending in a California federal district court, have been gathered together and coordinated for trial by a California Superior Court, where a single judge will preside over all cases. The automatic stay imposed by § 362 of the Bankruptcy Code presently prohibits the continuation of any

vided in Rule 9033(b). Review of the report and recommendation by the district court shall be governed by Rule 9033.

3. Windtech Development, Inc., a sister corporation, filed a simultaneous bankruptcy petition, but the parties, at oral argument, stipulated that the ruling sought applies only to the proceeding commenced in the Windtech, Inc. case.

4. *See In re Windtech, Inc.,* 73 B.R. 448 (Bankr.D. Conn.1987), for a more complete description of the operation of the wind turbine industry.

proceeding against Windtech.[5]

On April 6, 1987, Aetna filed the present adversary proceeding in the Windtech bankruptcy case seeking essentially the same relief as in its California interpleader action, and deposited $750,000.00 with the Clerk of the Court. Arbutus, Zephyr and three groups of investors known as the "Andrews Group", the "Rosenzweig Group" and the "Wallace Group" have moved that this court abstain from hearing the Connecticut action and permit the coordinated California actions to proceed. Windtech and the official creditors' committee [6] appeared at oral argument to request that the court grant these abstention motions. Only Aetna objects. The parties, except for Aetna, have joined in submitting to the court a proposed order which, if the present motions are granted, would enable the California coordinated litigation to determine any liability of Windtech for the nonoperating WTG's, and would require all such claimants to return to the bankruptcy court for a ruling on how they share in available estate funds. Of the more than 150 parties to the present interpleader proceeding, all reside in California except for Windtech and Aetna, whose offices are in Connecticut, and one investor who resides in Arkansas.

III.

The interest of justice, comity with State courts or respect for State law are the statutory grounds for discretionary abstention under § 1334(c)(1). 28 U.S.C. § 1334(c)(1) (Supp. III 1985). Several courts have ruled that the pendency of a state court action may constitute cause for the exercise of discretionary abstention when to do so will foster the interests of judicial administration, comprehensive disposition of litigation, conservation of judicial resources and fairness to the parties. *See Ghen v. Branca (In re Ghen),* 45 B.R. 780, 781 (Bankr.E.D.Pa.1985); *Counts v. Guaranty Savings & Loan Ass'n (In re Counts),* 54 B.R. 730, 736 (Bankr.D.Colo. 1985); *Taxel v. Veri-Fone, Inc. (In re American Mfg. Technologies, Inc.),* 60 B.R. 645, 651 (Bankr.S.D.Cal.1986). In addition, this court has previously noted in a relief from stay proceeding that while "[t]he bankruptcy court normally supervises the liquidation of claims against the estate[,] '[t]he rule is not inexorable,' and there are a limited number of exceptions. Thus, when a claim can be as expeditiously liquidated in a suit pending in another forum, and the expertise of the bankruptcy court is not required, that suit is often allowed to continue to avoid wasted time and effort." *In re Page-Wilson Corp.,* 37 B.R. 527, 529 (Bankr.D.Conn.1984) (citations omitted).

The application of these relatively straightforward concepts is, I believe, heavily fact-oriented. And under the facts as set out in section II *supra,* abstention is clearly warranted in the present proceeding. The most salient reason for abstention is that, without exception, every party in interest in this estate—the debtor, the creditors' committee, and all appearing creditors—urge abstention. The debtor's attorney represented in open court that to try the issues in the Aetna interpleader action in Connecticut would cause substantial expense to the estate because the lawyers previously retained by the debtor to defend the complex California litigation all reside in California. This position was supported by counsel for the creditors' committee.

The additional cost to the other defendants in Aetna's interpleader action, practically all of whom reside in California, for their witnesses and counsel to travel back and forth to Hartford will be extraordinary. The fact that the Aetna interpleader action in Connecticut is duplicative of the Aetna interpleader action pending in California emphasizes the wastefulness of these expenses. Resolution of Windtech's liability on its warranties in the present proceeding will still leave this issue to be

5. Most of the movants have pending motions for relief from stay to be acted upon after the abstention motions are resolved.

6. The creditors' committee comprises representatives of trade, non-warranty, claimants of the estate, and is represented by counsel.

relitigated in the California coordinated action with those who are not parties to the present proceeding.

Aetna contends in its brief that to allow the litigation to continue in California "would inhibit Cheney's ability to focus on and successfully manage the reorganization of Windtech." *Brief In Opposition to Motions for Abstention (Aetna's Brief)* 13. Regardless of Windtech's original intention in filing its bankruptcy case, no one now contemplates a business reorganization of Windtech.

Aetna also argues that the possibility that its policy may yield funds for the estate gives its interpleader action "a bankruptcy-related purpose." *Aetna's Brief* 15–19. Whether the estate has a potential asset in the insurance proceeds is not the overriding issue in the interpleader. The major issues raised by the interpleader, Aetna's liability under its policy based on Windtech's liability under its warranties, can be more appropriately litigated in the California forum at less cost to the estate, its creditors and to all the other parties who are defendants in Aetna's interpleader action. The expertise of the bankruptcy court is not required. Aetna professes no reason for its own benefit why its liability to the estate or others should be litigated in Connecticut. Rather, it relies on finding a justification in an alleged benefit to the debtor's estate. That argument is considerably weakened when the debtor, the unsecured creditors' committee and all other appearing creditors deny any such benefit exists.[7]

IV.

I conclude that expense, delay, waste and inefficiency are the logical consequences of litigating this interpleader in Connecticut. The interest of justice would be ill-served by retaining jurisdiction over the adversary proceeding. Accordingly, I recommend that the district court grant the motions for abstention.

Dated at Hartford, Connecticut, this 17th day of November, 1987.

7. Several of the parties' briefs contain extensive expositions on which issues in the Aetna interpleader are core, and which are not, and how different rights and procedures, including the right to a jury trial, are dependent upon that determination. *See* 28 U.S.C.A. § 157 (West Supp.1987). I believe it is likely that both core and non-core issues are involved in this proceeding, but that in light of the analysis of the abstention issue made herein, it is unnecessary either to identify specifically which are which or to decide the right of a party to a jury trial and where such a trial may be held.