554 A.2d 118

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Donna Marie ELY, Appellant.**

Superior Court of Pennsylvania.

Argued June 8, 1988.

Filed Feb. 10, 1989.

Neil W. Price, Johnstown, for appellant.

Before CAVANAUGH, ROWLEY and KELLY, JJ.

CAVANAUGH, Judge:

This appeal of Donna Marie Ely is from judgment of sentence imposed following her conviction on four counts of endangering the welfare of children, three counts of indecent assault, three counts of indecent exposure, two counts of incest and three counts of corruption of minors.

The brief offered on behalf of appellant is insufficient in its attempt to cognizably raise the issues on which her appeal is based and to explain clearly the errors which she alleges were made by the lower court. Furthermore, it is defective in that it violates several provisions of the Pennsylvania Rules of Appellate Procedure. The brief fails to conform to the format prescribed by Rules 2101 and 2111;

omits completely the contents required by Rules 2114 (Statement of Jurisdiction), 2115 (Order in Question) and 2117 (Statement of the Case); misplaces the section called for by Rule 2118 (Summary of Argument); and violates Rule 2119 since two of the arguments are simply brief restatements of the issues sought to be raised, and the body of the argument contains only two citations to authority without proper explanation of the principles for which the cases are cited.

Appellant raises the following issues on appeal:

1. Whether the Honorable Court properly applied the reasonable firmness standard of the duress defense to the particular circumstances and peculiar mentality of the Defendant.

2. Whether the contact described by the testimony of the children is sufficient to establish deviate sexual intercourse beyond a reasonable doubt.

3. Whether the mandatory sentencing provisions of Pa. 9718 [sic] when applied to a Defendant of limited mental capacity, is unconstitutional.

4. Whether the element provision in Pa. 3123(a) [sic] of the Crimes Code allowing the victim's ages to replace the forcible compulsion element for involuntary deviate sexual intercourse with respect to a Defendant of limited mental capacity, is unconstitutional.

The appellant, whose conviction resulted in a sentence of ten to twenty years imprisonment, alleges that she was placed under duress by Allan Ross, the man with whom she lived when she committed the acts detailed in the criminal complaint brought against her. Appellant's brief refers to her as "a mentally retarded adult with attendant personality disorders," and depicts Ross as a man capable of coercing or intimidating her participation in the events described in the record. She also questions the sufficiency of the Commonwealth's evidence to meet its burden of proof in light of contradictory testimony given by the children of appellant and Ross when questioned about the appellant's participation in the incidents of sexual abuse. An examina-

tion of the record leads us to the conclusion that there may be some merit to appellant's contentions, however, we do not feel that we can make a proper determination based on the brief submitted to this court by appellant's counsel.[1]

This court possesses discretionary authority to quash, dismiss or deny allowance of appeal based upon the substantial defects of appellant's brief, Pa.R.A.P. 2101. However, dismissing the present appeal would place the burden of counsel's errors entirely upon the appellant and would merely pave the way for appellant to petition the court for post-conviction relief. We believe less drastic means are available to correct the substantial defects of appellant's brief which will not further delay our review of the merits of her appeal. *Cf. Commonwealth v. Zeitlen*, 366 Pa.Super. 78, 530 A.2d 900 (1987).

Therefore, based on the authority we possess under Pa.R. A.P. 902 and 2101, we direct that this case be remanded to the trial court for the appointment of new counsel for appellant, Donna Marie Ely, and we further order that new counsel be directed to submit a brief on behalf of appellant which is in compliance with all applicable procedural rules. The brief is to be filed in this court within forty-five (45) days of the date of appointment.

This court shall retain jurisdiction over this appeal and will fully review the case on its merits when the new appellant's brief is submitted.

This case is remanded for proceedings not inconsistent with this opinion. Panel jurisdiction is relinquished, jurisdiction of the Court is retained. This case is to be assigned by the Prothonotary to another panel.[2]

ROWLEY, J. files dissenting opinion.

1. The cited defects were not cured by appellant's counsel's oral argument. The Commonwealth did not appear at oral argument.

2. Judge Rowley in his dissent has argued that, if the majority is correct in remanding this case for the appointment of new counsel, then, under Superior Court's Internal Operating Procedure 447B, the appeal should be retained and considered by the present panel in order that a decision may be made by the same panel without the

514

ROWLEY, Judge, dissenting:

I respectfully dissent.

I do not agree that appellate review is impossible on the present record. Although appellant's brief is not a model of clarity, I believe that the issues raised therein are capable of determination on the record before us. In my opinion, the arguments presented by appellant are without merit for the reasons set forth below, and I would affirm the judgment of sentence.

In her first issue, appellant asserts that in evaluating her defense of duress, the trial court did not give sufficient consideration to her "particular circumstances and peculiar mentality" (Brief for Appellant at 7). Appellant describes herself further as "a mentally retarded adult with attendant personality disorders, isolated within the community without supportive relatives and struggling with social agencies perceived by her to be hostile," who was "easy prey for an exploitative person such as the stronger, smarter co-Defendant [Ross]" (Brief for Appellant at 7).

The elements of the duress defense are set forth at 18 Pa.C.S.A. § 309(a), which provides that

It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, *which a person of reasonable firmness would have been unable to resist.*

necessity of reargument. We respectfully disagree. Internal Operating Procedure 447B contemplates that if a remand is made solely on procedural grounds, "i.e., for the filing of an opinion, the submission of a missing part of the record, etc., jurisdiction should be retained." On the contrary, we find the defect in this case to be one more serious than filling a missing procedural segment of an otherwise effectively prosecuted appeal. For the reasons previously stated, we have found that the brief and oral argument on appeal would not enable us to make a proper determination. Since the case will require preparation and submission of an entire new brief, and since a decision by this court without the opportunity for argument on the part of new counsel would be a deprivation of appellant's appeal rights, we have adopted the prescribed procedure rather than that contemplated by Internal Operating Procedure 447B.

(Emphasis added.) In determining whether a person of "reasonable firmness" in the defendant's situation would have been able to resist, the factfinder is to consider the seriousness of the crime the defendant was asked to commit; the nature and severity of the force used or threatened; alternative ways of escaping or averting that force; the defendant's age, physical condition, and strength; and all other factors that might affect the reaction of a person of reasonable firmness in the same situation. *Commonwealth v. Wiggins*, 274 Pa.Super. 617, 622, 418 A.2d 577, 580 (1980). In its "Pa.R.A.P. No. 1925 Statement,"[1] the trial court states that it took into account all of these considerations, as well as appellant's intellectual handicap, personality disorders, home environment, and alleged involuntary intoxication. Thus, the court's evaluation of the "reasonable firmness" standard met, and in fact exceeded, the requirements enumerated by this Court in *Wiggins*. Accordingly, I would conclude that appellant's first issue is without merit.

In her second issue, appellant contends that the evidence was insufficient to support her conviction on three counts of involuntary deviate sexual intercourse. Our scope of review on this issue was set forth in *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228 (1984):

> In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact; the fact finder is free to believe all, some, or none of the evidence.

*Id.*, 324 Pa.Superior Ct. at 424, 471 A.2d at 1229–1230 (citations omitted).

---

1. This statement was filed subsequent to the submission of, and is therefore not included in, appellant's brief.

The crux of appellant's argument on this issue is that the testimony of the three children with whom appellant allegedly engaged in involuntary deviate sexual intercourse was so inconsistent that it cannot support appellant's convictions. Appellant's claim requires that the testimony of the children be examined in some detail. On direct examination, appellant's seven-year-old daughter, J‗‗‗‗, having already testified that Allan Ross had touched her on the genitals on the night of July 15, 1986, gave the following testimony concerning appellant:

Q: Did he [Ross] make anybody else touch you?

A: Yes.

Q: Who?

A: Billy [appellant's nine-year-old son, who had been placed in foster care prior to this incident].

Q: Billy wasn't there that night, is that right?

A: Yes.

Q: Well, who else touched you then?

A: Nobody.

Q: Nobody. Did your mother touch you that night?

A: I think she did.

Q: What did she touch you with?

A: Her hand.

Q: Did she touch you with anything other than her hand?

A: No.

Q: Did she touch you with her mouth in fact?

A: Yes.

Q: Now, you said that she hadn't touched you with anything else then you said it was her mouth, did she touch you with her mouth?

A: Yes.

Q: Were you embarrassed to tell me that?

A: Yes.

N.T. at 115–16.[2]  On cross-examination J_____ denied having done "anything bad" with appellant on the night in question (N.T. at 125).  She also gave contradictory testimony as to whether appellant "ever [has] you do anything bad with your privates" (N.T. at 125–27).  On redirect and recross-examination she confirmed that appellant had performed oral sex on her (N.T. at 129–30).

On direct examination, seven-year-old E_____, daughter of Allan Ross, gave the following testimony concerning the events of July 15:

Q: [Ross] had [appellant] touch you?

A: Um Hum.

Q: Where did she touch you?

A: My private.

Q: What did she use to touch you on your private?

A: Her private or her hand.

Q: Did she use anything else?

A: No.  Not that I can remember.

Q: Did she ever touch your private with her mouth?

A: A couple times.

Q: Was it that same time?

A: Yes.

Q: Did you see her touch anyone else's private with her mouth?

A: J___'s [appellant's six-year-old son, J_____] and J_____'s [appellant's daughter].

Q: Now, when she was doing this stuff, was she upset or was she happy?

A: She was happy.

N.T. at 151.  On cross-examination E_____ first testified that she could not remember whether appellant had done anything with anybody's privates that night (N.T. at 160).  Subsequently she said that appellant had done something bad with her privates, but she was uncertain as to the date

2.  The notes of testimony from which these excerpts are taken are those of August 4, 1987.

(N.T. at 165–66). Following redirect and recross-examination, the trial judge asked E_____ whether she was positive that appellant had "put her mouth on your private part," and E_____ answered "yes" (N.T. at 169).

J_____, appellant's six-year-old son, gave the following direct testimony concerning the incident on July 15:

Q: Did you touch your mom?

A: Yeah.

Q: What part of her body did you touch? You are moving your lips. Did you touch her private?

A: (Whereupon, the witness nodded affirmatively.)

Q: What part of your body did you touch it with?

A: My hands and my mouth.

N.T. at 191. Although J_____ answered "no" on cross-examination when asked if appellant had ever made him touch her privates (N.T. at 199), the following exchange took place on redirect examination:

Q: Now, [defense counsel] was asking you whether your mom ever made you touch her privates. Allan made you touch her private, didn't he?

A: (Whereupon, the witness nodded affirmatively.)

Q: And she didn't try to stop you when that happened, did she?

A: No.

Q: And she didn't seem to mind when you touched her privates did she?

A: No.

N.T. at 200.

Viewing this testimony in the light most favorable to the Commonwealth, I would hold that the testimony of the children is sufficient to prove beyond a reasonable doubt that appellant committed the offense of involuntary deviate sexual intercourse against each of the three children. Each child testified on direct examination to an incident of oral-genital sex with appellant, and each child subsequently confirmed his or her initial testimony. The responses of the

children to the questions asked on cross-examination were admittedly confusing, but it cannot be assumed that children will testify with the clarity expected of adults, particularly when the substance of their testimony is likely to be perceived by them as shameful and embarrassing. Moreover, the credibility of the testimony is a matter to be determined by the trial court, who, as noted above, is free to believe all, part, or none of it. I would find, therefore, that appellant's second issue is without merit.

Appellant's third and fourth issues present challenges to the constitutionality of 42 Pa.C.S.A. § 9718 and 18 Pa.C. S.A. § 3123(5), respectively. The former statute prescribes a mandatory five-year sentence for anyone convicted of involuntary deviate sexual intercourse with a victim under the age of sixteen; the latter statute establishes that deviate sexual intercourse is involuntary, whether or not force is used, if the victim is under the age of sixteen. The basis of appellant's constitutional attack, as I discern it from her brief, is that because she "is laboring under a very limited mental capacity" (Brief for Appellant at 6), application of the statutes in her case constitutes cruel and unusual punishment. Appellant cites no case law that supports her argument with respect to either of the statutes, and in fact this Court has already rejected a claim, which rested on somewhat different grounds, that 42 Pa.C.S.A. § 9718 violated the Eighth Amendment. *Commonwealth v. Wildermuth*, 347 Pa.Super. 640, 645, 501 A.2d 258, 261 (1985). The statutes in question carry a strong presumption of constitutionality, and "we will not strike down a statute unless its violation of the Constitution is so clear, palpable and plain as to preclude doubt or hesitation as to its validity." *Commonwealth v. Bannister*, 345 Pa.Super. 178, 182, 497 A.2d 1362, 1364 (1985). In my opinion, appellant has not shown such a violation in the present case, and I would therefore hold that her third and fourth issues are meritless. Having found that all of appellant's issues are without merit, I would affirm the judgment of sentence.

Even if I were able to agree that appellate review was impossible on the present record and briefs, I would not remand for a "second bite at the apple." Appellant has available, in the form of a petition for post-conviction relief, an effective remedy for counsel's perceived failing, and I see no advantage to be gained or salutary purpose to be served by remanding the case for the appointment of new counsel and the filing of a new brief on appellant's behalf. Such a procedure is not "less drastic" than established post-conviction procedures, but more so. In my opinion, such a procedure encourages counsel's disregard for the Rules of Appellate Procedure. Courts, even more than litigants, should comply with applicable procedural rules.

Furthermore, if I were able to agree that remand and retention of jurisdiction by this Court were, for some reason, warranted in this case, I would still dissent from the majority's decision that the case, upon its return to this Court, is to be assigned to another panel. This Court's Internal Operating Procedures, effective April 1, 1988, do not contemplate or provide for such a procedure. Rule 447B of our Internal Operating Procedures sets forth the two options that are available to this Court if we decide, as the majority has done in this case, that a remand to the trial court is necessary. Where a case is remanded for procedural reasons, jurisdiction of the panel as well as of the Court is to be retained in order to "allow the appeal to retain the same appeal and journal numbers in the Superior Court and [to] enable *the same panel* which heard argument to render an ultimate decision without the necessity of reargument" (emphasis added). On the other hand, where the purpose of the remand is to enable the trial court to reach a new decision or to reconsider a prior one, the jurisdiction of the Court as well as of the panel should be relinquished.

Nowhere in our Internal Operating Procedures is there provision for the hybrid procedure that has been adopted by the majority in this case. Not only do the Procedures not authorize the practice of retaining Court jurisdiction while relinquishing panel jurisdiction, but the purpose of Rule

447B was in fact to eliminate that very practice. By refusing to retain the jurisdiction of the present panel, the majority has perpetuated the practice that Rule 447B was designed to eliminate.

Moreover, I do not share the majority's assumption that appellant will be deprived of her appeal rights unless her case is assigned to a different panel, who will not only review the brief prepared on her behalf by newly appointed counsel, as would the present panel if its jurisdiction were retained, but will also hear argument by new counsel. Appellant's case has already been argued to this Court by present counsel. In addition, there is no statutory or constitutional right to oral argument. This Court disposes of a great many cases without hearing argument, and Pa.R.A.P. 2315(a), discussing the time allotted for argument, states that "[o]ral argument is not a matter of right and will be permitted only to the extent necessary to enable the appellate court to acquire an understanding of the issues presented." Retention of panel jurisdiction would allow appellant's new brief to be considered by the members of this Court who are already familiar with the essential facts of her case, and the essential issues raised, and would thus facilitate the prompt disposition of her appeal. I perceive no conflict between preserving appellant's appeal rights and adhering to this Court's Internal Operating Procedures.

I suggest also that, although the majority characterizes the "defect" in the present case as being more serious than a mere procedural omission or error, the remedy which they propose will be of limited utility in correcting so serious a deficiency. In effect, the majority has concluded that present counsel was ineffective in presenting appellant's case to this Court. At the same time, they have chosen to retain this Court's jurisdiction and to limit new counsel's efforts on appellant's behalf to somehow preparing a better version of the same brief and argument that they have found impossible to understand. If present counsel has in fact been ineffective, it is not beyond the realm of possibility that new counsel will be able to identify additional issues,

not raised and preserved by present counsel, which he or she considers meritorious. Some of these issues may be incapable of resolution without an evidentiary hearing. The hybrid solution adopted by the majority will bar the raising of such newly identified issues and the holding of an evidentiary hearing. If the brief filed by present counsel is indeed as deficient as the majority perceives it to be (a perception I do not share, as explained above), I do not see why it is desirable to tie the hands of newly appointed counsel and of the trial court by retaining this Court's jurisdiction. The end result of the procedure devised by the majority may well be to postpone, until some future proceeding under the Post Conviction Relief Act, the ultimate resolution of appellant's case.