601 A.2d 319

Robert RUMBAUGH, Individually and on Behalf of All Other Shareholders of Beck–Rumbaugh Assoc., Inc.

v.

Norman H. BECK, Jr. and Joan W. Beck, a/k/a Joan Williams, his wife, and Richard Biborosch and Joseph W. Chandler and Michael J. Del Collo, Esquire and Plum Realty, Inc. and Beck–Rumbaugh Assoc., Inc.

Appeal of Joseph W. CHANDLER.

Robert RUMBAUGH on Behalf of All Other Shareholders of Beck–Rumbaugh Assoc., Inc.

v.

Norman H. BECK, Jr. and Joan W. Beck, a/k/a Joan Williams, his wife, and Richard B. Biborosch and Joseph W. Chandler and Michael J. Del Collo, Plum Realty, Inc. and Beck–Rumbaugh Assoc., Inc.

Appeal of Norman H. BECK, Jr. and Joan W. Beck a/k/a Joan Williams, his wife.

Robert RUMBAUGH, Individually and on Behalf of All Other Shareholders of Beck–Rumbaugh Associates, Inc., Appellants,

v.

Norman H. BECK, Jr. and Joan W. Beck, a/k/a Joan Williams, his wife, and Richard Biborosch, Joseph W. Chandler, Michael J. Del Collo, Esquire and Plum Realty, Inc. and Beck–Rumbaugh Assoc., Inc.

Superior Court of Pennsylvania.

Argued April 18, 1991.

Filed Dec. 31, 1991.

222

Aaron J. Beyer, Philadelphia, for Chandler, appellant at No. 1706 and appellee at Nos. 1707 and 1708.

Norman H. Beck, pro se.

Fred Lowenschuss, Philadelphia, for Rumbaugh, appellants at No. 1708 and appellees at Nos. 1706 and 1707.

David E. Loder, Philadelphia, for Del Collo, appellee at Nos. 1706, 1707 and 1708.

Before MONTEMURO, BECK and TAMILIA, JJ.

MONTEMURO, Judge:

The parties in this action in conspiracy and fraud cross-appeal from the trial court's order denying their post-trial motions and entering judgment in favor of plaintiff Robert Rumbaugh and against defendants Norman H. Beck, Jr., Joan Beck and Joseph W. Chandler. Having carefully reviewed the record in this case, we affirm in part and reverse in part the judgment against Chandler and remand for an assessment of an appropriate damage award. We quash the appeal of appellants Joan Beck and Norman Beck.

In 1976, defendant-appellant Norman H. Beck and plaintiff-appellant Robert Rumbaugh (Rumbaugh) incorporated Beck–Rumbaugh Associates, Inc. ("Corporation") to sell office equipment and supplies as manufacturers' representatives. Beck owned 51% of the corporate shares and Rumbaugh owned 49% of the corporate shares. The relationship between Beck and Rumbaugh eventually deteriorated, resulting in almost continuous litigation since 1979, including

an action brought in 1979 in federal district court by Rumbaugh, the instant action brought by Rumbaugh in the Philadelphia Court of Common Pleas in 1984, and a filing by Beck for voluntary bankruptcy of the Corporation in 1985.

In the federal district court suit, Rumbaugh claimed that Beck breached an agreement to purchase Rumbaugh's 49% ownership interest in the Corporation and alleged other wrongful conduct on the part of Beck and the Corporation; the jury determined that Rumbaugh was entitled to recover $135,109.00 from Beck personally for breach of the agreement, as well as an additional $5,000 from Beck and $28,000 from the Corporation. The jury also determined that the Corporation was entitled to $8,154.00 from Rumbaugh on its counterclaim for breach of a non-competition agreement. As a condition of execution of the judgment, the district court required that Rumbaugh deposit his stock in the Corporation with the court. *See Rumbaugh v. Beck*, No. 79–3849 (E.D.Pa. June 1, 1983) (Hannum, J.). The decision was affirmed on appeal to the United States Court of Appeals for the Third Circuit. *See Rumbaugh v. Beck*, 841 F.2d 1120 (3d Cir.1988).

In 1984, Rumbaugh brought this action in equity as an individual and on behalf of all other shareholders of the Corporation, alleging the existence of three different conspiracies as well as fraud and unlawful conversion. The first count was brought individually and on behalf of the stockholders of the Corporation against the five individual defendants and the defendant realty company and asserts that the defendants conspired to and did convert the assets of the Corporation, primarily by (1) causing fraudulent mortgages to be recorded as liens against the Florida condominium owned by the Corporation and (2) diverting rental income from the condominium. The second claim asserts a claim on behalf of Rumbaugh as an individual, alleging an illegal conspiratorial relationship between defendants Norman Beck, Joan Beck, Biborosch, Chandler, Del Collo and Plum Realty, Inc. (the Becks' real estate agent) to convert the assets of the Corporation and thereby prevent

Rumbaugh from executing on the judgments he won in federal court against the Corporation and Beck. The third count, brought individually and on behalf of the Corporation, alleges an unlawful agreement between defendants Norman Beck and Joan Beck to deprive Rumbaugh of his share of profits from the Corporation between 1981 and the time of trial. Rumbaugh asserted his fourth and final count as an individual against Norman and Joan Beck, requesting an accounting of all money and commissions received on account of the Corporation's business. The complaint sought compensatory and punitive damages arising out of the alleged conspiracies and fraudulent conversion; the complaint also requested an award of counsel fees.

Five months after the present suit was brought, the Corporation filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code. At the trial in the instant case, Rumbaugh argued that the filing of the bankruptcy was part of the defendants' ploy to defeat Rumbaugh's ability to execute on the judgment.

Following a bench trial, the trial court concluded that defendants Norman H. Beck, Joan Beck and Joseph Chandler conspired to deprive Rumbaugh of his share of the condominium and assets of the Corporation; the court concluded that the Becks and Chandler wrongfully diverted corporate assets for the purpose of sheltering funds from lawful execution by Rumbaugh. The chancellor awarded Rumbaugh monetary compensation and counsel fees, but denied Rumbaugh's request for punitive damages. The court ruled against Rumbaugh on the remaining allegations of conspiracy.

Rumbaugh, the Becks and Chandler brought these cross-appeals following the trial court's denial of their post-trial motions and entry of judgment in favor of Rumbaugh. Initially, we note that appellants Joan Beck and Norman Beck have filed a pro se appellate brief with this Court. Their brief violates numerous rules of appellate procedure insofar as the Becks have failed to include a statement of

jurisdiction, a statement of the questions involved, a statement of the case, a summary of the argument, a short conclusion stating the precise relief sought, and any designated argument section. *See* Pa. R.A.P. 2111(a), 2114, 2115, 2116(a), 2117, 2118, and 2119(a). A review of the record shows that in fact, the Becks' brief is merely a repetition of their proposed findings of fact and conclusions of law and their post-trial motions which were submitted to the trial court. It is well-established that such blatant violations of the rules of procedure may result in dismissal of the appeal. *See Vaskie v. West American Insurance Co.*, 383 Pa.Super. 76, 556 A.2d 436, 438 n. 1 (1989); *Commonwealth v. Ely,* 381 Pa.Super. 510, 554 A.2d 118 (1989); *Commonwealth v. Stoppie,* 337 Pa.Super. 235, 486 A.2d 994 (1984); *Lucarelli v. W.C.A.B.,* 119 Pa.Cmwlth. 72, 546 A.2d 151 (1988). We are unable to determine precisely what the Becks' allegations of error are or make any rulings on them, as the Becks have failed to properly state any questions for our review. We therefore quash the appeal of Joan and Norman Beck.

Appellant Joseph Chandler raises five issues on appeal: (1) whether the trial court erred in refusing to grant Chandler's motion for a non-suit on the basis that Rumbaugh failed to meet his burden of proving that Chandler was involved in a conspiracy; (2) whether the trial court erred in concluding that Rumbaugh had standing to pursue a shareholder's derivative action in accordance with Pa. R.C.P. 1506; (3) whether the trial court lacked jurisdiction to resolve this dispute given the pending bankruptcy action of Beck–Rumbaugh Associates, Inc.; (4) whether the trial court erred in denying Chandler's motion for a non-suit on the basis that Rumbaugh failed to prove damages; (5) whether the trial court erred in denying Chandler's motion for a nonsuit on the basis that Rumbaugh's total interest in Beck–Rumbaugh Associates was fully litigated and liquidated in a prior action in federal court. Plaintiff-appellant Rumbaugh raises one additional issue on appeal: whether

the trial court erred in assessing the amount of damages and refusing to award punitive damages.

■ First we must determine the effect that the verdict in the federal action has on the claims advanced in this case and on Rumbaugh's standing to assert a cause of action as a shareholder on behalf of the Corporation. Rumbaugh advances two incompatible positions relative to his rights regarding the Corporation. Rumbaugh claims to be an interested shareholder with the right to bring a shareholder derivative action and recover assets of the Corporation diverted by the conspirators; yet, at the same time, he asserts the right to recover the monetary judgment which he won against Beck in the federal case in which he sued for Beck's breach of an agreement to buy out Rumbaugh's share in the Corporation. Rumbaugh claims that the defendants conspired to deprive him of the ability to recover this award from the Corporation and Beck by conspiring to divert corporate funds and otherwise encumber corporate property. Thus, on the one hand, Rumbaugh claims shareholder status of the Corporation, whereas on the other he claims entitlement to recover for the sale of his share in the stock of the Corporation. We conclude that under principles of collateral estoppel, Rumbaugh may not assert claims as a shareholder in the Corporation, given the conclusions of the jury in the federal action.

■ The doctrine of collateral estoppel will bar the litigation of an issue where

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party to the prior adjudication, and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *In Re Estate of Ellis*, 460 Pa. 281, 333 A.2d 728, 731 (1975).

*Safeguard Mutual Ins. Co. v. Williams*, 463 Pa. 567, 345 A.2d 664 (1975). These four criteria are met here.

The federal litigation centered on whether Beck had agreed to buy Rumbaugh's share in the Corporation. The determination of the jury was that Rumbaugh voluntarily ceased to be active in the Corporation as of June 30, 1979; Beck had agreed to purchase Rumbaugh's stock in the Corporation; and Beck had breached that agreement. The jury determined that Rumbaugh was owed $135,109.00 by Beck for breach of the agreement. As a prerequisite for execution of the judgment for the contract price of his stock, the district court ordered Rumbaugh to deposit his shares of stock in the Corporation with the court, holding that if Rumbaugh collects on the award, he will have been paid for his interest in the Corporation, and "to retain his stock will result in double recovery." *Rumbaugh v. Beck,* *supra,* slip op. at 7. [841 F.2d 1120 (table)]. The court noted that "Rumbaugh holds bare legal title to his stock subject to divestment upon payment of the contract price for the stock." *Rumbaugh v. Beck, supra,* slip op. at 5. [841 F.2d 1120 (table)]. The judgment of the district court was affirmed on appeal. *Rumbaugh v. Beck,* 841 F.2d 1120 (3d Cir.1988).

In light of the findings of the jury in the federal action, we find that the issue of Rumbaugh's interest in the Corporation was finally litigated on its merits in the federal action. As the federal action resulted in a determination that Beck had agreed to purchase Rumbaugh's interest in the Corporation, we must conclude that Rumbaugh is collaterally estopped from asserting an interest as a shareholder of the Corporation, and therefore does not have standing to bring a shareholder derivative action on behalf of the Corporation. *See* Pa. R.C.P. 1506 (requiring that plaintiff who brings shareholder derivative action must be a stockholder or owner of interest in the corporation at time of transaction of which he complains); *Fitzpatrick v. Shay,* 314 Pa.Super. 450, 461 A.2d 243 (1983). Thus, Rumbaugh's claims for his share of the corporate profits and assets accrued between 1981 and the time of trial must fail. He may not recover for the sale price of his stock and at the

same time continue to assert a right to assets accumulated after he relinquished his rights as a stockholder. We note, however, that Rumbaugh asserted claims in this action in part as an individual against Norman Beck, Joan Beck and Chandler, alleging that the Becks and Chandler unlawfully agreed to and in fact did vest Chandler with certain legal rights to allow Beck to evade satisfaction of his and the Corporation's liability to Rumbaugh arising out of the federal litigation. Rumbaugh does have standing to pursue the claims which he raised as an individual, namely, the conspiracy to deprive him of the ability to execute on the federal judgment, as this is an injury for which he, rather than the Corporation, is entitled to recover damages.

Chandler argues that Rumbaugh is completely barred under the doctrine of collateral estoppel from litigating the issues in this case because the prior federal action and the bankruptcy action completely resolved Rumbaugh's interest in the Corporation. We disagree with this argument to the extent that this suit deals with the defendants' efforts to deprive Rumbaugh of the ability to enforce the judgment won by Rumbaugh in the federal action. In fact, Rumbaugh asserted at the trial in this case that the placing of the Corporation in voluntary bankruptcy was part of the scheme to prevent Rumbaugh from executing on the judgment. As the instant case involves legal principles and facts which are significantly different from those forming the basis of the suit in federal district court and the bankruptcy court, we disagree that Rumbaugh is collaterally estopped from pursuing his cause of action for wrongful conversion, fraud and conspiracy. Further, we note that the bankruptcy hearing and decision occurred after the trial in this case. Thus, at the time this suit was brought and tried, there was no final decision from the bankruptcy court which could collaterally estop Rumbaugh from litigating his right to recover the federal judgment owing to him.

Chandler argues that the Philadelphia Court of Common pleas lacked jurisdiction to hear this matter. Rumbaugh initiated the instant suit in October, 1984. In March

of 1985, Beck placed the Corporation in voluntary bankruptcy under Chapter 7 of the Bankruptcy Code. Chandler argues that once the Corporation was placed in bankruptcy, the Philadelphia Court of Common Pleas lost jurisdiction over this action, as the complaint sought the return of rental payments diverted from the Corporation and sought damages representing Rumbaugh's share of the condominium purchased by the Corporation, and the bankruptcy court has sole jurisdiction to hear claims regarding corporate assets which have been diverted from the Corporation. As stated above, Rumbaugh has standing to assert only his individual claims regarding the defendants' conspiracy, fraud and unlawful conversion. Chandler does not challenge the trial court's power to hear these claims.

Moreover, we note that the bankruptcy court, the United States District Court for the Eastern District of Pennsylvania and the trustee in bankruptcy all refused Chandler's request to stay these proceedings, have the case removed to bankruptcy court or have the action taken over by the trustee in bankruptcy. *See In re Beck–Rumbaugh Associates, Inc.,* 103 B.R. 628, 630 (Bankr.E.D.Pa.1989) *aff'd.* 114 B.R. 418 (E.D.Pa.1990). The federal statute conferring original jurisdiction in the United States district courts to hear all civil proceedings arising under the Bankruptcy Code or related to cases under the Bankruptcy Code provides that

> [n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding ... arising in or related to a case under title 11 [11 U.S.C. § 101 et seq.—Bankruptcy].

28 U.S.C. § 1334(c)(1). Thus, a bankruptcy court has the prerogative to refrain from exercising jurisdiction over state claims which are in some way related to the bankrupt corporation. Where the state action involves predominantly issues of state law and the state court can timely adjudicate the matter, or where litigation of the action in the bankrupt-

cy court will result in expense, delay, waste and inefficiency, in the interest of comity, the bankruptcy court will abstain from hearing the proceeding. *See e.g. In re Engra, Inc.*, 86 B.R. 890 (S.D.Tex.1988); *In re Lindsey*, 85 B.R. 397 (W.D.Tex.1988); *In re Wood*, 84 B.R. 432 (S.D.Miss.1988); *Re Windtech, Inc.*, 80 B.R. 628 (D.Conn.1987). Thus, as the bankruptcy court and the district court refrained from exercising their jurisdiction over the instant action, the case was properly before the Philadelphia Court of Common Pleas.

■ Chandler argues that the trial court erred in denying Chandler's motion for a non-suit and in not entering judgment in favor of Chandler because Rumbaugh failed to prove that Chandler was involved in a conspiracy. In conjunction with this argument, Chandler claims that the trial court erred in taking judicial notice of the bankruptcy proceedings,[1] and without the benefit of the factual findings of the bankruptcy court, there is not sufficient evidence to sustain the trial court's finding of conspiracy.

> Our scope of review on appeals from a decree in equity is a limited one. Facts found by the chancellor in a court of equity, when supported by competent evidence in the record, are binding upon an appellate court. *Presbytery of Beaver–Butler v. Middlesex Presbyterian Church*, 507 Pa. 255, 489 A.2d 1317, *cert. denied*, 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985).

*Pierce v. Penman*, 357 Pa.Super. 225, 515 A.2d 948 (1986), *appeal denied* 515 Pa. 608, 529 A.2d 1082 (1987). Although we agree that the trial court should not have taken judicial notice of the findings of the Bankruptcy Court, we conclude that Rumbaugh produced enough evidence at the trial in this case to prove the existence of an unlawful conspiracy.

The trial in this case was completed as of May 25, 1988. The bankruptcy court's decision was filed in August, 1989.

---

1. We note that this argument is inconsistent with Chandler's assertion that Rumbaugh is collaterally estopped from litigating the issues in this case because his interest in the Corporation was fully litigated in the bankruptcy action.

The trial court's adjudication and decree nisi in this case was filed on March 16, 1990. Despite the fact that the bankruptcy court's decision came down over a year after the record in this case was closed, the trial court took judicial notice of the bankruptcy proceedings, including some of the factual conclusions of the Bankruptcy Court. *See* Adjudication and Decree Nisi, March 16, 1990 at 7–10.

 As a general rule our courts may not take judicial notice in one case of the records of another case. *Gulentz v. Schanno Transportation, Inc.*, 355 Pa.Super. 302, 513 A.2d 440 (1986), *appeal denied* 515 Pa. 580, 527 A.2d 541 (1987); *Woolard v. Burton*, 345 Pa.Super. 366, 498 A.2d 445 (1985); *In re Estate of Brockerman*, 332 Pa.Super. 88, 480 A.2d 1199 (1984). We find that the trial court erred in taking judicial notice of the bankruptcy court's proceedings, particularly in light of the fact that bankruptcy court's findings were not made part of the record in this case, as the bankruptcy court did not even resolve the estate of the Corporation until after the instant trial ended.

 We nevertheless find that Rumbaugh proved at trial that an unlawful conspiracy existed between defendants Norman Beck, Joan Beck and Joseph Chandler.

> To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act by unlawful means.... Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy....

*Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979) (citations omitted). After hearing the evidence in this case, the trial court concluded that Rumbaugh had met his burden of proof that Norman Beck, Joan Beck and Joseph Chandler engaged in "an unlawful conspiracy with the common design, intent and purpose of causing legal damage and harm to Rumbaugh and the Corporation by diminishing, destroying, or impairing ... Rumbaugh's ability to enforce the aforesaid civil judgment and to obtain the amounts owed to him by Beck and the Corporation."

Adjudication and Decree at 11. In support of its finding, the court stated:

> In furtherance of this conspiracy, Beck and Chandler caused a fraudulent mortgage to be placed against the condominium [owned by the Corporation] in the sum of $20,000.00 to be in favor of Chandler. If any monies were paid by Chandler in exchange for the $20,000.00 mortgage, such monies were not paid to the Corporation, were not used to benefit the Corporation, and were not used to make the necessary installment payments toward the first mortgage on the condominium, which was held by the Maryland National Bank. Instead, any such monies were wrongfully diverted to Beck and/or his wife, Joan Beck, so as to deplete or reduce the assets of the Corporation and to shelter such funds from lawful execution by Rumbaugh. Pursuant to the aforesaid conspiracy, Beck has caused the Corporation to fail to pay the installments on the first mortgage held by Maryland National Bank. As a result, the Maryland National Bank instituted foreclosure proceedings against the condominium. Beck received a $6,750.00 rental check from Plum Realty pursuant to a leasing agreement pertaining to the condominium, which he wrongfully endorsed and gave to his wife, Joan Williams Beck, who in turn wrongfully endorsed said check using the name "Joan Williams" and deposited it in her personal account. Thus, the $6,750.00 check was wrongfully diverted to the Becks so as to deplete or reduce the assets of the Corporation and to shelter such funds from lawful execution by Rumbaugh. The said rental payments were not used to benefit the Corporation nor to make the necessary installment payments toward the first mortgage on the condominium which was held by the Maryland National Bank, as should have been done. Following the pending foreclosure proceedings instituted against the condominium, Beck caused the Corporation to file for bankruptcy, thereby freezing the Corporate assets, without ever giving notice to Rumbaugh and thus wrongfully deprived Rumbaugh from

obtaining any monies or assets whatsoever. In addition to the aforesaid findings of fact, to support its finding of conspiracy, this Court finds from the evidence presented in this case ... that Chandler and Beck were long-time friends, Chandler knew Beck owed money to Rumbaugh, the district court judgment was entered before Chandler ever made any loans to Beck, and neither Beck nor Chandler appeared at trial in the present action to rebut accusations of collusion by Rumbaugh.

Trial Court Adjudication and Decree Nisi, March 16, 1990 at 11–12.

We disagree with Chandler that this evidence was insufficient to support a finding of conspiracy. We note that Rumbaugh's efforts to make out his case were greatly impeded by the defendants' failure to cooperate except upon order of the court. It is well-established that the credibility of witnesses is within the purview of the trial court. Thus, it was well within the province of the trial court, as fact-finder, to conclude that Chandler must have known of the filing of the mortgage on his behalf. Chandler's deposition testimony reveals that Chandler is an experienced business-person who had numerous dealings in real estate, was a principal of a company and was represented by various attorneys in several states. The trial court committed no error in drawing the reasonable inference that a person in Chandler's position with Chandler's business savvy simply would not loan $20,000 without some security for the loan. It is also reasonable to infer that the filing of the mortgage by Chandler's attorney did not occur without Chandler's knowledge. Chandler testified that although his Florida attorney, Mr. Thomas Purdo, was his golfing partner and handled legal matters for him in Florida, Mr. Purdo never discussed the filing of the mortgage in Chandler's favor with Chandler. At his deposition, Chandler testified that he had little or no remembrance of any of the facts surrounding the transaction involving the Florida condominium. Although Chandler testified that he believed he had lent the $20,000 to Beck alone, Chandler acknowledged that he

nevertheless filed a proof of claim against the Corporation's estate in bankruptcy court for $20,000 plus interest on the basis of the mortgage he held against the Florida condominium.

The trial court could reasonably disbelieve Chandler's testimony that he had absolutely no awareness of his interest in the condominium or the mortgage which he held against the Florida property until he received notice from the bank which was foreclosing on the first mortgage. Similarly, the court could reasonably find incredible Chandler's testimony that he had no idea who Robert Rumbaugh was or that the Corporation even existed and that he believed Beck owned the condominium personally until service of the complaint in this lawsuit.

Our courts have held that a civil conspiracy may be proven by circumstantial evidence, provided the evidence is full, clear and satisfactory. *Commonwealth v. Musser Forests, Inc.*, 394 Pa. 205, 146 A.2d 714 (1958); *Blank & Gottschall Co. v. First National Bank of Sunbury*, 355 Pa. 502, 50 A.2d 218 (1947); *S.N.T. Industries, Inc. v. Geanopulos*, 363 Pa.Super. 97, 525 A.2d 736 (1987), *appeal denied* 520 Pa. 577, 549 A.2d 137 (1988). Given the relationship between the Becks and Chandler, and Chandler's involvement with the Florida condominium and the bankruptcy action, we hold that Rumbaugh met his burden of proving that Chandler conspired with Norman and Joan Beck to diminish and encumber the Corporation's assets and thereby prevent Rumbaugh from executing on his judgment against Beck and the Corporation. *See Collins v. Cronin*, 117 Pa. 35, 45, 11 A. 869 (1887) (Pennsylvania recognizes cause of action for conspiracy to transfer property of debtor so that it cannot be reached by legal process, thereby hindering, delaying and cheating creditors). We disagree with Chandler that simply because Chandler chose not to be forthcoming with information at his depositions and chose to absent himself from the courtroom proceedings in this case, his denials and lack of cooperation alone defeat Rumbaugh's case.

We also disagree with Chandler that the trial court's finding of conspiracy rested upon the findings of the Bankruptcy Court. The evidentiary basis for the conspiracy, that is, Joan Beck's unlawful conversion of corporate funds, the relationship between the Becks and Chandler, and Chandler's unlawful involvement with the Florida condominium, was established at the trial in this case through the deposition of Chandler and the testimony of the other witnesses. Although the trial court did refer to the bankruptcy court's findings, a reading of the chancellor's summary of the evidence, as quoted above, which supports his finding of conspiracy convinces us that the court's conclusions derive from the facts presented during the trial of this case.

■ Both Rumbaugh and Chandler challenge the trial court's award of damages. The trial court entered the following award:

## DECREE NISI

AND NOW, this 16th day of March, 1990, it is hereby DECLARED and DECREED that:

1. Plaintiff Robert Rumbaugh is awarded the sum of $3,307.50 for rental fees improperly withheld from him.

2. Plaintiff is awarded counsel fees and costs in the amount of $25,000.00.

3. Plaintiff is awarded 49% of all trustee fees, counsel fees, other administrative expenses and all other costs authorized in the bankruptcy action, and may file a copy of the order with this Court in which such payments have been allowed by the Bankruptcy Court.

4. Plaintiff is awarded $49,736.38 for his share of the condominium.

5. The foregoing awards are against defendants Norman H. Beck, Joan Beck, and Joseph W. Chandler.

Decree Nisi, March 16, 1990.

Rumbaugh argues that on the basis of the trial court's findings of fact and conclusions of law, he is entitled to a minimum verdict of $248,863.79; in addition, Rumbaugh

claims that he is entitled to punitive damages. Chandler is of the view that Rumbaugh failed to prove entitlement to any damages.

This suit involved a claim that the conspirators unlawfully agreed to divert, diminish and encumber the Corporation's assets in order to prevent Rumbaugh from executing on his judgments against Beck and the Corporation.

> The damages to which plaintiff is entitled are such only as naturally and proximately result from the wrongful act or acts done in pursuance of the conspiracy, prior to the commencement of the action, and which directly result from the conspiracy....
>
> The measure of damages for defeating the collection of plaintiff's debt, by placing the debtor's property out of plaintiff's reach, is the value of the property and not the amount of the debt, unless the value of the goods exceeds the amount of the debt, in which case the measure is the amount of the debt....

15A C.J.S. *Conspiracy* § 33, at 715, 717 (1955).

Rumbaugh proved that rental income from the condominium was diverted from the Corporation; that Chandler caused a fraudulent mortgage to be placed against the Florida condominium; and that the actions of Chandler and the Becks resulted in the Maryland Bank's foreclosure on the condominium, thereby precipitating the bankruptcy proceeding and the subsequent sale of the condominium and depletion of corporate assets. As Rumbaugh proved that the defendants unlawfully conspired to hinder Rumbaugh as a creditor of Beck and of the Corporation, Rumbaugh is entitled to recover the amount of the value of the Corporation's property which was diverted, diminished or encumbered as a consequence of the wrongful acts of the defendants, not to exceed the amount of the federal judgment. We note that the trial court based the damage award on the erroneous assumption that Rumbaugh's status as a shareholder of the Corporation entitled him to one-half of the value of the assets of the Corporation. On remand, the court should determine the amount of damages in light of

Rumbaugh's status as a defrauded creditor of Beck and the Corporation in accordance with the principles set forth above.[2]

We agree with Chandler that there is no basis in Pennsylvania law to support the award of counsel fees.

The general rule is that the parties to litigation are responsible for their own counsel fees and costs unless otherwise provided by statutory authority, agreement of parties, or some other recognized exception. *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 300–301, 344 A.2d 837, 842 (1975); *Shapiro v. Magaziner*, 418 Pa. 278, 280, 210 A.2d 890, 892 (1965).

*Mantell v. Mantell*, 384 Pa.Super. 475, 559 A.2d 535, 542 (1989).

The only arguable statutory basis for awarding counsel fees to Rumbaugh for pursuing this litigation is provided by 42 Pa.C.S.A. § 2503.

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

**2.** For example, the chancellor concluded that in furtherance of the conspiracy, the defendants diverted rental income in the amount of $6,750.00 from the corporate account; the chancellor awarded Rumbaugh one-half of this amount on the basis of Rumbaugh's shareholder agreement entitling him to fifty percent (50%) of the corporate profits. As we concluded above, Rumbaugh can no longer claim a shareholder interest in the Corporation, but instead is a creditor of the Corporation and of Beck. According to our reading of the law on conspiracy to defraud creditors, Rumbaugh would be entitled to an award equivalent to the full amount of the rental funds diverted by the conspirators, that is, the full value of the property removed from the Corporation. Further, as the trial court determined that the conduct of the defendants led to the Maryland bank's foreclosure on the condominium, Rumbaugh may properly recover an additional compensatory award representing the amount, if any, by which the estate of the Corporation was diminished as a result of the foreclosure and the subsequent sale of the condominium, to the extent that the diminution affected Rumbaugh's ability to recover the federal award. The court may award any other damages reflective of a depletion of the corporate assets stemming from the conspiracy, provided that the damage award does not exceed the amount of the federal judgment which Rumbaugh has not yet recovered.

. . . .

(9) Any participant who is awarded counsel fees because of the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

Section 2503 is inapplicable, however, to conduct that occurred prior to the commencement of this suit. *Cher–Rob, Inc. v. Art Monument Co.*, 406 Pa.Super. 330, 594 A.2d 362 (1991). Unless Chandler acted to delay or to obstruct justice during the pendency of this action, the award of counsel fees under § 2503 is inappropriate. Thus, the Chancellor erred in awarding counsel fees to compensate Rumbaugh for the costs of instituting the present action.

Finally, Rumbaugh claims that the trial court erred in denying his request for punitive damages. Our Supreme Court recently stated:

Assessment of punitive damages are proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct, *Pittsburgh Outdoor Adv. Co. v. Virginia Manor Apts., Inc.*, 436 Pa. 350, 260 A.2d 801 (1970), and are awarded to punish that person for such conduct. *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986); *Restatement of Torts*, Section 908(1).

In *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984), we adopted Section 908(2) of the *Restatement (Second) of Torts* which states:

(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's *evil motive or his reckless indifference to the rights of others*. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant. (Emphasis added).

\* \* \* \* \* \*

The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused. Likewise, in equity matters, our standard of review "... is limited to a determination of whether the Chancellor committed an error of law or abused his discretion. The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." *Lower Frederick Twp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). *SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702 (1991).

The Chancellor determined that punitive damages are not proper in this action because its damage award fully compensates Rumbaugh for harm caused by the conspiracy. (T.C.O. 17). In light of our reversal of the Chancellor's award of counsel fees, the trial court should also be given an opportunity to reassess the appropriateness of awarding punitive damages.

In light of the foregoing, we remand this case for a determination of an appropriate damage award. We quash the appeal of Joan Beck and Norman Beck.

Quashed in part. Affirmed in part and reversed in part and remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

TAMILIA, J., concurs and dissents.

TAMILIA, Judge, concurring and dissenting:

Although I join much of the majority Opinion, I dissent to the holdings that there is neither legal authority to award punitive damages nor counsel fees in the amount of $25,000.

The majority found the determination by the trial court that Rumbaugh should share in the profits of the corporation was erroneous because the federal action resulted in a transfer of his share of the stocks to appellees, for which he must be compensated, but eliminates him as a shareholder

for purposes of participating in the profits. I fully agree in this analysis and finding.

I disagree with the majority that an award of counsel fees and/or punitive damages is not legally permissible because the facts of this case and legal conclusions therefrom drawn by the majority fully justify such an award. The majority states: "we conclude that Rumbaugh produced enough evidence at the trial in this case to prove the existence of an unlawful conspiracy." (Montemuro, J., p. 325.) The majority further states:

> We also disagree with Chandler that the trial court's finding of conspiracy rested upon the findings of the Bankruptcy Court. The evidentiary basis for the conspiracy, that is, Joan Beck's unlawful conversion of corporate funds, the relationship between the Becks and Chandler, and Chandler's unlawful involvement with the Florida condominium, was established at the trial....
>
> . . . . .
>
> Rumbaugh proved that rental income from the condominium was diverted from the Corporation; that Chandler caused a fraudulent mortgage to be placed against the Florida condominium; and that the actions of Chandler and the Becks resulted in the Maryland Bank's foreclosure on the condominiums, thereby precipitating the bankruptcy proceeding and the subsequent sale of the condominium and depletion of corporate assets. ... On remand the court should determine the amount of damages in light of Rumbaugh's status as a defrauded creditor of Beck and the Corporation in accordance with the principles set forth above.

(At 327–328.) I believe the findings above clearly support the award of counsel fees and would also justify Rumbaugh's requests for punitive damages.

As to counsel fees, it is provided by 42 Pa.C.S. § 2503, Right of participants to receive counsel fees:

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

. . . .

(9) Any participant who is awarded counsel fees because of the conduct of another party in commencing the matter *or otherwise was arbitrary, vexatious or in bad faith.*

*Id.* (emphasis added). I believe the actions of the Chandlers and the Becks was "otherwise arbitrary, vexatious and in bad faith." Their conspiracy to defeat a judicial determination by the federal court, thereby forcing this litigation, fulfills all the requirements of arbitrary, vexatious and bad faith conduct and fully justifies the award of counsel fees necessary for Rumbaugh to pursue rights already won in a court of law. To require relitigation because of conspirational and unlawful action without compensation for legal costs diminishes the rightful recovery and inflicts further damages on Rumbaugh. Punitive damages should also be considered because of the unlawful, cynical and outrageous actions of the Becks and Chandler. That behavior certainly fulfills the requirements for awarding punitive damages detailed in *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702 (1991), cited by the majority.

I, therefore, concur with the majority's decision to remand to recalculate damages in view of its finding on divestiture of Rumbaugh in the Corporation by the federal district court adjudication. I would affirm the trial court's award of $25,000 in counsel fees and remand for a determination of punitive damages.